**ROZIER HARDT MCDONOUGH PLLC**
Travis E. Lynch (SBN 335684)
James F. McDonough, III (*pro hac vice forthcoming*)
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (470) 480-9505, -9514
Email: jim@rhmtrial.com
Email: lynch@rhmtrial.com

**INSIGHT, PLC**
Steven W. Ritcheson (SBN 174062)
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: switcheson@insightplc.com

*For Plaintiff FLEET CONNECT SOLUTIONS LLC*
(additional attorneys listed on signature page)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> TELETRAC NAVMAN US LTD., <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT AGAINST TELETRAC NAVMAN US LTD. FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** <br><br> Hon. _____ |

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this complaint against Teletrac Navman US Ltd., ("Teletrac" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, **Exhibit E**, **Exhibit F, Exhibit G,** and **Exhibit H** respectively:

|   | U.S. Patent No. | Title |
|---|---|---|
| A. | 7,742,388 | Packet Generation Systems and Methods. |
| B. | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices |
| C. | 6,961,586 | Field Assessments Using Handheld Data Management Devices |
| D. | 8,494,581 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| E. | 7,206,837 | Intelligent Trip Status Notification |
| F. | 7,463,896 | System And Method For Enforcing A Vehicle Code |
| G. | 7,656,845 | Channel Interface Reduction |
| H. | 7,783,304 | Wireless Communication Method |

2.     Plaintiff seeks monetary damages.

### PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.     Teletrac is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 310 Commerce, Suite 100, Irvine, CA 92602.

5.     Teletrac may be served through its registered agent for service, 1505 Corporation CSC Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

## JURISDICTION AND VENUE

6.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.   This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the California Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in California and in this district.

10.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District directly and through intermediaries, and offered its products or services, including those accused of infringement here, to customers and potential customers located in California, including in this District.

11.     Defendant maintains regular and established places of business in this District.

12.     For example, Defendant owns, operates, manages, conduct businesses, and directs and controls the operations and employees of facilities at several locations in this District.

13.     Defendant maintains its principal place of business in this District.

14.     Defendant has committed acts of infringement from this district, including, but not limited to, use of the Accused Products.

## THE ACCUSED PRODUCTS

15.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

16.    Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.teletracnavman.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

17.    Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes fleet management platform and tracking solution systems. *See, e.g.,* **Exhibit I**.

18.    Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the Teletrac Navman fleet management platform and tracking solution, which includes, but is not limited to, the TN480, ATS1, Qube300, VT101, VT102, ST101, SI201, RE200, RE400, AT301, MT201, MT501, Smart Quad-Dashcam, Smart Dual-Dashcam, TN360 - Power Take-Off Sensor, Teletrac's ELD on TN360, DIRECTOR® Electronic Logging Device, TN360 Mobile App(lication), DRIVE App(lication) for Android, TN360 Sentinel ELD App(lication), TN360 Messaging App(lication), Insights from TN360, TN360 SmartJobs App(lication), TN360 EasyDocs App(lication), TN360 Forms App(lication), Journey Planner App(lication), SmartNav Route App(lication), TN360 Pre-trip Checklist App(lication), TN360 dashboard/software platform, TN360 Fleet Management Software, TN360 ACM Equipment Management Software, GPS Asset Tracking Systems, and associated hardware, software and applications (the "Accused Products").

19.    The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof,

including, but not limited to, 802.11a, 802.11ac, 802.11b, 802.11g, and 802.11n.

20. The wireless communications performed and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

21. The Accused Products also track, analyze, and report vehicle maintenance needs, track or cause to be tracked vehicle locations, and allow for communication between a system administrator and a remote unit, including broadcasting advisory communications.



*See* **Ex. I**.



*Id.*

22.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,742,388**

23.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.     The USPTO duly issued U.S. Patent No. 7,742,388 (hereinafter, the "'388 patent") on June 22, 2010 after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005.  A true and correct copy of the '388 patent is attached as **Ex. A**.

25.     FCS owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

26.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

27.     The written description of the '388 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

28.     Defendant has directly infringed and continues to directly infringe one or more claims of the '388 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

29.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.

30.     For example, Defendant performs a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

31.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendant has induced and continue to induce customers and end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused

Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendant's inducement is ongoing.

32.     Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

33.     Defendant had knowledge of the '388 patent at least as of the date when it was notified of the filing of this action.

34.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

35.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

36.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

37.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

38.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

39.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,593,751

40.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

41.     The USPTO duly issued U.S. Patent No. 7,593,751 (hereinafter, the "'751 patent") on September 29, 2009 after full and fair examination of Application No. 11/262,699 which was filed on October 31, 2005.  *See* **Ex. B**.

42.     FCS owns all substantial rights, interest, and title in and to the '751 patent, including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

43.     The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

44.     The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45.     Defendant has directly infringed one or more claims of the '751 patent by using, providing, supplying, or distributing the Accused Products.

46.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the '751 patent.

47.     For example, Defendant, using the Accused Products, performs a method for managing data during a field operation using a handheld field data management device, comprising the steps of: providing a handheld field data management device to a user, said handheld field data management device configured to enable the user to manage data collected at a field operation location, wherein said field data management device includes: a memory containing at least one field data management program module for working with a microprocessor to process instructions enabling a handheld field assessment device user to find a field operation location, collect industry-specific data at the field operation location, and communicate in real-time with a remote server to transfer data to and from a remote server, obtain updated instructions or procedures, and for retrieving third party information useful for the field operation from the Internet; a microprocessor executing said at least one field data management program; a positioning module including GPS for determining handheld device location and configured to coordinate with mapping software to provide map directions to field operation locations; a display for viewing field related data, maps and third party information retrieved from the Internet; a user interface adapted for enabling the handheld data management device user to interact with said at least one field data management program; and a wireless communication module for providing communications between the handheld field assessment device and the

remote server, and for providing communications with third party resources from the Internet in support of field operations; enabling the user to access instructions including mapped directions from at least one of said field data management program and said remote sever to assist the user in finding a field operation location based on the location of the handheld field data management device; enabling the user to access instructions from said at least one field data management program to assist the user in collecting industry-specific data at the field operation location; and enabling the user to access instructions from said at least one field data management program to assist the user in communicating with a remote server using the handheld field data management device before, during and after the collection of industry-specific data at the field operation location.

48.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

49.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,961,586**

50.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

51.     The USPTO duly issued U.S. Patent No. 6,961,586 (hereinafter, the "'586 patent") on November 1, 2005 after full and fair examination of Application No. 09/955,543 which was filed on September 17, 2001.  *See* **Ex. C**.  A Certificate of Correction was issued on June 25, 2013.  *See id.*

52.     FCS owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

53.     The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

54.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55.     Defendant has directly infringed one or more claims of the '586 patent by using, providing, supplying, or distributing the Accused Products.

56.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent.

57.     For example, Defendant, using the Accused Products, performs a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to an industry-specific field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

58.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for

infringement of one or more claims of the '586 patent.

59.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,494,581**

60.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61.     The USPTO duly issued U.S. Patent No. 8,494,581 (hereinafter, the "'581 patent") on July 23, 2013 after full and fair examination of Application No. 12/547,363 which was filed on August 25, 2009.  *See* **Ex. D**.

62.     FCS owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

63.     The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods of managing mobile assets.

64.     The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.     Defendant has directly infringed one or more claims of the '581 patent by using, providing, supplying, or distributing the Accused Products.

66.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '581 patent.

67.     For example, Defendant, using the Accused Products, performs a  method,

comprising: using a handheld device to access an assessment program stored in a memory of a computing device located geographically remote from the handheld device, the assessment program being configured to enable a field assessment in a specific industry; collecting field data associated with the field assessment using the handheld device in response to the assessment program; using the handheld device to determine a geographical location of the handheld device; and communicating the field data collected using the handheld device and the geographical location of the handheld device to the computing device.

68.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

69.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,206,837

70.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

71.     The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151 which was filed November 4, 2002.  A true and correct copy of the '837 patent is attached as **Ex. E**.

72.     FCS owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

73.     The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation

of voice and data communications systems.

74.   The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75.   Defendant has directly infringed and continues to directly infringe one or more claims of the '837 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

76.   Defendant has directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent.

77.   For example, Defendant, using the Accused Products, performs a method comprising receiving a location of a mobile communications device that is in transit to a destination, estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on said location and at least one historical travel time statistic, and sending the time-of-arrival bounds to said mobile communications device.

78.   Defendant has indirectly infringed and continues to indirectly infringe the '837 patent by inducing others to directly infringe the '837 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '837 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '837 patent, including, for example, claim 1.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting

the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '837 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '837 patent.  Defendant's inducement is ongoing.

79.    Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '837 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '837 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '837 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '837 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

80.    Defendant had knowledge of the '837 patent at least as of the date when it was notified of the filing of this action.

81.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

82.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

83.    Defendant's infringement of the '837 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

84.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '837 patent.

85.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

86.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '837 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology.   The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,463,896

87.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

88.     The USPTO duly issued U.S. Patent No. 7,463,896 (hereinafter, the "'896 patent") on December 9, 2008 after full and fair examination of Application No. 11/542,850 which was filed on September 20, 2006.  *See* **Ex. F**.  A Certificate of Correction was issued on August 13, 2013.  *See id.*

89.     FCS owns all substantial rights, interest, and title in and to the '896 patent, including the sole and exclusive right to prosecute this action and enforce the '896 patent against infringers and to collect damages for all relevant times.

90.     The claims of the '896 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems for enforcing vehicle codes.

91.     The written description of the '896 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

92.     Defendant has directly infringed the '896 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

93.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '896 patent.

94.     For example, Defendant, using the Accused Products, performs a method for enforcing a vehicle code.   The method includes receiving a wireless communication signal by a first mobile unit having a unique identifier, the wireless communication signal transmitted by a second mobile unit associated with a vehicle; downconverting data in the received wireless communication signal from radio frequency to baseband; determining based on the downconverted data: a vehicle identifier associated with the vehicle, and a GPS position associated with the vehicle; determining by a system administrator a status of the vehicle using the vehicle identifier to monitor the vehicle for code enforcement, wherein the determining the status includes parsing the received wireless communication signal to determine the status of the vehicle; generating baseband message data indicating the status by constructing at least one data packet from a plurality of data fields, the data fields including the unique identifier of the first mobile unit and the vehicle identifier; and upconverting the baseband message data to radio frequency for transmission to the second mobile unit, thereby transmitting the upconverted baseband message data indicating the status of the vehicle.

95.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.   Defendant is liable to FCS in an amount that compensates it for such

infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

96.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '896 patent.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,656,845

97.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

98.     The USPTO duly issued U.S. Patent No. 7,656,845 (hereinafter, the "'845 patent") on February 2, 2010, after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  *See* **Ex. G**.  A Certificate of Correction was issued on November 30, 2010.  *See id.*

99.     FCS owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

100.     The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

101.     The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

102.     Defendant has directly infringed the '845 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

103.     Defendant has directly infringed, either literally or under the doctrine of

equivalents, at least claim 12 of the '845 patent.

104.    For example, the Accused Products used by Defendant provide a system comprising a processor, a first transceiver configured to communicate via a first medium, a second transceiver configured to communicate *via* a second medium, wherein at least one of the first transceiver and the second transceiver is configured to retry transmission of a packet at a lower rate if a prior transmission of the packet is not acknowledged, an allocation unit configured to dynamically allocate data channels to one of the first medium and the second medium based upon a desired level of service.

105.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '845 patent by inducing others to directly infringe the '845 patent.  Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '845 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '845 patent, including, for example, claim 12 of the '845 patent.  Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '845 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '845 patent.  Defendant's inducement is ongoing.

106.    Defendant has also indirectly infringed by contributing to the infringement

of the '845 patent.  Defendant has contributed to the direct infringement of the '845 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '845 patent, including, for example, claim 12 of the '845 patent.  The special features constitute a material part of the invention of one or more of the claims of the '845 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

107.   Defendant had knowledge of the '845 patent at least as of the date when it was notified of the filing of this action.

108.   Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

109.   Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

110.   Defendant's direct infringement of the '845 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

111.   FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

112.   FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

113.   FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to

suffer this harm by virtue of Defendant's infringement of the '845 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,783,304

114. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

115. The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 7,783,304 (the "'304 patent") on August 24, 2010, after full and fair examination of Application No. 12/546,645, which was filed on August 24, 2009. *See* **Ex. H**. A Certificate of Correction was issued on May 28, 2013. *See id.*

116. FCS owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce the '304 patent against infringers and to collect damages for all relevant times.

117. The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

118. The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

119. Defendant has directly infringed the '304 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

120. Defendant has directly infringed, either literally or under the doctrine of

equivalents, at least claim 1 of the '304 patent.

121.   For example, Defendant, using the Accused Products, performs a method of wirelessly communicating with a mobile unit.  The method includes establishing a communication link between a first mobile unit and a website; searching a list of users via a log comprising an address of a second mobile unit; outputting a match comprising the address of the second mobile unit via a display; constructing a communication comprising a plurality of information fields, the plurality of information fields comprising an address of the first mobile unit and the address of the second mobile unit; transmitting the communication from the first mobile unit, through the website, to the second mobile unit; and storing information related to the communication in a communication log.

122.   FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

123.   FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

124.   FCS hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

125.   FCS requests that the Court find in its favor and against Defendant, and that the Court grant FCS the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. An award of a reasonable royalty for infringement Asserted Patents;

c. A permanent injunction enjoining Defendant and its officers, directors, agents,

servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388, '837, and '845 patents or, in the alternative, an award of a reasonable ongoing royalty for future infringement of these patents by such entities;

d.  Judgment that Defendant accounts for and pays to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

e.  Judgment that Defendant's infringements be found willful as to the '388, '837, and '845 patents, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

f.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

g.  That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 20, 2023</u>

Respectfully submitted,

<u>Steven W. Ritcheson</u>

Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: swritcheson@insightplc.com

James F. McDonough, III*
Travis E. Lynch (SBN 335684)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (470) 480-9505, -9514
Email: jim@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

*Attorneys For Plaintiff*
*Fleet Connect Solutions LLC*

* *pro hac vice* forthcoming

**List of Exhibits**

A. U.S. Patent No. 7,742,388
B. U.S. Patent No. 7,593,751
C. U.S. Patent No. 6,961,586
D. U.S. Patent No. 8,494,581
E. U.S. Patent No. 7,206,837
F. U.S. Patent No. 7,463,896
G. U.S. Patent No. 7,656,845
H. U.S. Patent No. 7,783,304
I.  Website: Teletrac Navman ELD on TN360